## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT COURT OF WISCONSIN

| | |
|---|---|
| INSPIRED PURSUITS, LLC<br>QUALTIM, INC.<br>DRJ ENGINEERING, LLC<br>       Plaintiff<br><br>v.<br>PARAGON COMPONENT SYSTEMS, LLC<br>CLEARSPAN COMPONENTS, LLC<br>JOHN HOLLAND,<br>JAMES HOLLAND,<br>ROB EASON, *et al. see list of Defendants*<br><br>       Defendant | CIVIL CASE NO.: |

## COMPLAINT

Plaintiff, Inspired Pursuits, LLC, Qualtim Inc., and DrJ Engineering by its attorney, Mayville La Rosa, claims for its relief against above named Defendants, alleges, and shows to the court as follows.

## INTRODUCTION

The core of this case is intellectual property developed by the members of Inspired Pursuits, LLC ("IP-LLC"). The members of IP-LLC are Daniel Holland ("Dan"), Suzanne Grundahl ("Suzi") and Kirk ("Kirk") Grundahl. They have been working together since 1999 on being completely independent from the traditional structural component industry business model. This work became a focal point in 2009 when Dan bought the rights to a software program from Bill Turnbull called CompuTrus. From that point forward, Dan, Kirk, and Suzi continued to collaborate using their specific areas of knowledge, expertise, and trade secrets to create the intellectual property ("IP-Software") at issue in this case. Upon Dan's untimely passing in January 2024, without any prior notice, Defendants began to purposefully, wrongfully,

maliciously use the IP-Software without permission then deprived and withheld Plaintiffs' access to the IP-Software, and terminated the decades long business partnership. Defendants breached a signed non-disclosure agreement ("NDA") when they blocked Plaintiffs from rightful ownership and use of the IP-Software. Plaintiffs seek to be compensated for the significant investment it put into creating the IP-Software from which Defendants, without introspection or understanding engineering laws, desire to continue to benefit.

## PARTIES

1. Inspired Pursuits, LLC ("IP-LLC") is a Wisconsin limited liability company with its principal place of business in Madison, Dane County, Wisconsin. IP-LLC was organized for the purpose of owning and holding trade secrets and IP that will be licensed to collaborative entities under its exclusive management.

2. Qualtim, Inc. ("Qualtim") is a Wisconsin corporation with its principal place of business in Madison, Dane County, Wisconsin. Qualtim engages in the business of providing consulting services where innovative testing, building engineering, building science engineering, regulatory, product/market  development, training, certification and information technology solutions are needed.

3. DrJ Engineering, LLC, ("DrJ") is a Wisconsin limited liability company with its principal place of business in Madison, Dane County, Wisconsin. DrJ was established in 2011 to undertake professional structural engineering, building design and ANAB accredited ISO/IEC 17065 certified product evaluation services.

4. Paragon Component Systems, LLC ("Paragon") is a Tennessee limited liability company with its principal place of business in Chattanooga, Hamilton County, Tennessee.

Paragon engages in the business of providing electronic data processing and mathematical equations that Paragon calls "truss software."[1]

5. Clearspan Components, LLC ("Clearspan")[2] is a Mississippi limited liability company with its principal place of business in Meridian, Lauderdale County, Mississippi. Clearspan is engaged in its primary business of manufacturing trusses and wall panels.

6. Rob Eason ("Rob") is an individual resident of the state of Mississippi and the current president of Clearspan.

7. James Holland ("James") is individual resident of the state of Mississippi and a current employee of Clearspan.

8. John Holland ("John") is an individual resident of the state of Georgia and the current president of Paragon located in Tennessee.

9. Avery Radmacher is an individual resident of the state of Georgia and a current employee of Paragon located in Tennessee.

10. Andrew Ewin is an individual resident of the state of Tennessee and a current employee of Paragon located in Tennessee.

11. David Reed is an individual resident of the state of Tennessee and a current employee of Paragon located in Tennessee.

12. Jeremy Bierema is an individual resident of the state of New Jersey and a current employee of Paragon located in Tennessee.

13. Michael Pitts is an individual resident of the state of Georgia and a current employee of Paragon located in Tennessee.

---

[1] https://www.paragontruss.com/
[2] http://clearspaninc.com/ and https://www.facebook.com/clearspaninc/

14. Nathan Bierema is an individual resident of the state of Virginia and a current employee of Paragon located in Tennessee.

15. Seth Duncan is an individual resident of the state of Tennessee and a current employee of Paragon located in Tennessee.

16. Scotty Hoelsema is an individual resident of the state of Tennessee and a current employee of Paragon located in Tennessee.

## JURISDICTION AND VENUE

### A.  Subject-Matter Jurisdiction

17. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331(a) & (b), and §1367(a).

18. This Court has federal subject-matter jurisdiction under 28 U.S.C. §1332. There is complete diversity between Plaintiffs and each Defendant.

19. Pursuant to 28 U.S.C. §1391(b)(2), venue is proper in this district because a substantial part of the events or omissions that give rise to this claim occurred in Wisconsin.

20. IP-LLC is subject to this Court's jurisdiction because IP-LLC has its principal place of business in Wisconsin, its registered agent is in this district, and otherwise IP-LLC has such minimum contacts that this Court's exercise of jurisdiction is appropriate.

21. Daniel Holland, who is a member of IP-LLC and was also owner and President of Clearspan, waived personal jurisdiction to Wisconsin under the terms of IP-LLC's operating agreement Section 4, attached hereto as Exhibit A.

22. Defendants signed an NDA, which states that disputes regarding the contract would be governed by the laws of Wisconsin.

23. The amount in controversy is greater than $75,000 as required by 28 U.S.C. 1332(a). As investment into the IP-Software, Plaintiffs Qualtim and DrJ Engineering provided all the engineering mechanics, physical truss/wall panel testing data, engineering analysis, engineering supervision and manufacturing knowledge that was the substance undergirding the creation of IP-LLC's unique and innovative proprietary intellectual property in the amount of $23.8 million dollars that remain unpaid.

24. All paragraphs from this introduction and each Count are incorporated by reference into each other Count as necessary.

25. Plaintiffs demands a jury for all issues so triable.

## RELEVANT STATUTES

26. Wisconsin has numerous statutes and case law that were in effect during the relevant time period, which are applicable to the acts stated herein.

27. *Wis. Stat.* § 100.20 provides for protections to all businesses operating in the State of Wisconsin, which states "Methods of competition and trade practices. (1) Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited."

28. With regard to "Trusts and Monopolies," *Wis. Stat*. § 133.03, "Unlawful contracts; conspiracies," states in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal."

29. *Wis. Stat.* §134.01 provides that it is unlawful for any 2 or more persons to mutually undertake or concert together for the purpose of willfully injuring another in reputation, trade, or business.

30. *Wis. Stat.* §134.90 provides for injunctive relief in a trade secrets dispute stating the court may award and continue an injunction for a reasonable period of time to eliminate commercial advantage by the person who violated the Uniform Trade Secrets Act.

## FACTUAL BACKGROUND

As early as 1999, and more formally in 2009, and up to his untimely death on January 17, 2024, Dan, Kirk and Suzi collaborated continuously. The common bond was their passion for and deep knowledge of the structural building component and engineered framing industry, where their individual expertise was well known. One key attribute of this close and confidential collaboration was the development and protection of structural component engineering, manufacturing and software trade secrets. This highly confidential collaboration was intended to create unique intellectual property, held by IP-LLC.

Generally, trusses[3] are well-known to be created through the use of engineering mechanics and pin-end connected structural engineering. Metal plate connected wood trusses are individually created from unique engineering mechanics properties, which are proprietary to each truss plate manufacturer through their proprietary truss plate testing, engineering calibrations and then the creation of their uniquely calibrated math and data processing software. Generic trusses and proprietary metal plate connected trusses support building design loads and where professional engineering knowledge is required to assure truss performance has considered all life safety application implications, and has the necessary depth of knowledge to supervise all professional engineering decisions with respect to the software's functionality.

---

[3] Definition of a truss: A truss is essentially a triangulated system of (usually) straight interconnected structural elements; it is sometimes also referred to as an open web girder. The individual elements are connected at nodes; the connections are often assumed to be nominally pinned (i.e. do not carry moment induced forces at joints. This is statics 101.). The external forces applied to the system and the reactions at the supports are generally applied at the nodes. When all the members and applied forces are in a same plane, the system is a plane or 2D truss. The principal force in each element in a truss is axial tension or compression.

Since 2009 when Dan wrote his first software code using his background in AutoCAD
LISP[4] to integrate his AutoCAD work with the purchase of the CompuTrus engineering program
(including access to the source code) for generating truss design drawings, Plaintiffs Qualtim and
DrJ collaborated with Dan as president of Clearspan to develop the unique engineering capability
of the software to be used in the market through licensing rights issued by IP-LLC. Since Dan
was not a professional engineer, Qualtim and DrJ, under the direction of Kirk, provided all the
engineering mechanics, physical truss/wall panel testing data, engineering analysis, engineering
supervision and manufacturing knowledge that was the substance undergirding the creation of
IP-LLC's unique and innovative proprietary intellectual property. That developed intellectual
property then transformed into marketable engineering and manufacturing through the electronic
data processing and mathematical equations called Paragon.

Trusses, wall panels, beams and all related engineered members create a structural
framework that support external loads in the most cost effective manner possible. Each
engineered member is designed to resist specific applied loads based upon where that engineered
member will be applied in the structure. The wrong loads applied to a truss or wall panel design
by a naïve and/or non-engineering-educated individual has very serious engineering integrity
issues along with violating each state's engineering laws and risking public safety. Dan
understood this, which is why he purposely partnered with Kirk and Suzi Grundahl's companies.
Not only did he grasp the necessity of following engineering laws as defined in the states in
which he sold trusses, but he had experienced working with Kirk and Suzi prior to establishing
Paragon.

---

[4] https://help.autodesk.com/view/ACDLT/2024/ENU/?guid=GUID-FB2F8870-8CC0-4062-AA06-9D2893F8E09E ;
https://en.wikipedia.org/wiki/Lisp_(programming_language)#

Plaintiffs did not invoice for the hours spent on developing the IP-Software but diligently recorded the time and expenses devoted to the Paragon software. The reason all the hours invested were not invoiced was due to the oral agreement between long time colleagues, Kirk, Dan, and Suzi that there would be continuous profit sharing as the IP-Software becomes marketable.

There was mutual understanding between Dan, Kirk, and Suzi that the Paragon software is the culmination of their trifecta: engineered product manufacturing, professional engineering, and trade secret innovations. The software was the apex of many years of late night/early morning calls between Kirk and Dan envisioning being independent from the traditional industry business model, meticulous groundwork, 50/50 shared expenses in order to properly lay out the foundation, and years of careful foresight. All of that intellect and trade secrets would be housed by the entity IP-LLC founded by Kirk, Dan, and Suzi. Paragon was merely a data processing tool to streamline the work necessary to generate engineered product sales.

As the software continued to significantly contribute to Clearspan's success, Dan paid Qualtim and DrJ a share of its profits acknowledging that the profits Clearspan was making was due to the partnership and DrJ was not being properly compensated for its professional activities supporting Clearspan. Dan's point in time thinking confirmed that the continuous joint venture concepts were sound and the pinnacle being that Clearspan and DrJ would benefit from the intellectual property held under IP-LLC.

Up until Dan's passing, that vision was kept highly confidential. In ongoing preparation for Dan and Kirk's 2024 market development vision, Paragon traveled to Wisconsin and the individual employee attendees signed NDAs. *See* Exhibit B. It was important that the joint venture was kept confidential prior to any Clearspan/DrJ market development work, such as, but not

limited to visiting Stephanie J. Young, P.E,  President at Mattson, Macdonald, Young. Shortly after Dan's passing, Paragon and Clearspan ceased communicating with Plaintiffs. It started misusing the software and recklessly disregarding the NDAs that were signed and the joint venture between parties. Plaintiffs seek compensation for its investment in the software and for consequential damages caused by Defendants' actions in terminating the business relationship without notice and tortuously interfering with Plaintiffs' existing and prospective clients.

### FIRST CAUSE OF ACTION:  BREACH OF CONTRACT IN NONDISCLOSURE AGREEMENT

31. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

32. From 2009 until Dan's untimely passing in 2024, Plaintiff and Defendants collaborated on the Developed IP.

33. Plaintiffs, as professional engineers, provided all of the engineering mechanics, physical truss/wall panel testing/test data, engineering analysis, engineering supervision and manufacturing knowledge that was the substance undergirding the creation of IP-LLC's unique and innovative proprietary Developed IP to Defendants. provided all the

34. On or around August 8, 2023, Defendants traveled to Plaintiff's principal place of business in Madison, Dane County, Wisconsin to continue all previous discussions, promises and representations so that IP-LLC's IP would be ready and able to be used by the Clearspan/DrJ "engineering/structural manufactured component" team in pertinent and target markets.

35. On or around August 8, 2023, in Madison, Dane County, Wisconsin, Plaintiffs and Defendants entered into a written contract entitled "Mutual Non-disclosure Agreement"

("NDA") in which all parties agreed that the business strategy, engineering knowledge, and trade secrets that shaped the IP-Software would be kept confidential.

36. For three consecutive days, August 8-10, 2023, Plaintiffs and Defendants held meetings regarding the strategies of the partnership between Plaintiffs and Defendants.

37. All meetings were led by IP-LLC members, in concert with each IP-LLC aligned company, designated as a disclosing party.

38. After the Defendants left Plaintiffs' facilities, all parties continued to work together in a concerted effort to prepare the software so that it would be ready and able to be used by the Clearspan/DrJ "engineering/structural manufactured component" team in pertinent and to be developed markets, under the leadership of IP-LLC members.

39. Plaintiff has performed all the conditions, covenants, promises, notifications and agreements required of it under the terms of the contract.

40. Since Dan Holland's untimely death, Plaintiffs attempted to communicate to Defendants on multiple occasions to obtain the reasons why they have not responded to any communications as part of normal business operations.

41. On or around July 24, 2024, Defendants restricted the software access to Plaintiffs and directly informed Plaintiff's customers regarding the termination without proper notice to Plaintiffs.

42. Defendant has failed and refused, and continues to fail and refuse, to perform its part of the contract or to tender such performance which is to keep the business strategy and trade secrets confidential.

43. Defendants disclosed to the public business strategies, engineering knowledge, and trade secrets that were meant to remain confidential until a Clearspan/DrJ market release was agreed upon.

44. Defendants disclosed to the public by entering all communications that contained trade secrets as exhibits and recklessly disregarding the confidentiality agreed upon in the NDA.

45. It was foreseeable at the time Defendants breached the NDA that there would be damages caused to the Plaintiffs.

46. Plaintiffs have no adequate remedy at law for Defendants' failure to perform its obligations under the signed NDAs.

47. Defendants' breach of the NDA has resulted and will continue to result in not only economic and trade secrets being provided to IP-LLC competitors, such as MiTek, Inc. Alpine, Eagle Metal Products, etc., in the public domain losses, but reputational and relationship damages as well.

48. Because of Defendants' failure to perform its obligations under the NDA, Plaintiffs suffered actual and consequential damages.

**SECOND CAUSE OF ACTION:  BREACH OF IMPLIED OR CONSTRUCTIVE CONTRACT OF BUSINESS PARTNERSHIP**

49. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

50. On or around 2009, when Daniel Holland wrote his first software code for the truss industry, Plaintiff and Defendant began discussing a future business strategy.

51. Since 2009 until the events that led to this lawsuit, Plaintiff performed work for Defendants, either discounting its services by 50% with a note on the invoice that stated "Qualtim's share" or not billing for the work at all, while keeping record of the time spent as an investment for the purpose of realizing future mutual value. This was a memorialization of the oral agreement that both Plaintiffs and Defendants were in a 50/50 partnership in creating and developing the IP-Software.

52. On or around November 2021, as the IP-Software continued to show promise and was a substantial factor in making Defendants profitable, Daniel Holland as the current sole owner and President of Clearspan, called Plaintiff regarding profit sharing.

53. During that November 2021 conversation, Dan acknowledged that Plaintiffs have not been paid from the record profits Clearspan generated due to the innovative application of engineering knowledge that Plaintiffs provided, which allowed Clearspan to buy truss plates from anyone, which is very unique in the truss manufacturing industry.

54. During 2021, the software still had some needed improvements so it needed additional support from Plaintiff's professional engineering knowledge.

55. On or around December 15, 2021, Defendants offered to pay Plaintiffs a share from Clearspan's profits that it would not have generated but for the engineering work performed by Plaintiff.

56. In consideration of Defendants' promise, Plaintiff continued to provide engineering decisions in a concerted effort to prepare the software so that it would be ready and able to be used by the Clearspan/DrJ "engineering/structural manufactured component" team in pertinent and to be developed markets, under the leadership of IP-LLC members.

57. Beginning in June of 2024, Defendants failed and refused to perform the agreement in that Plaintiff would be the exclusive engineering company that would seal drawings for Defendants in return for profit sharing from Defendants.

58. Defendants failed and refused to perform the agreement in that Plaintiff would share from the profits of Defendants.

59. Defendants failed and refused to perform the agreement in that Plaintiff would have ownership rights to the IP-Software.

60. Defendants failed to perform its obligations under the contract and has indicated that it will refuse to perform its obligations in the future.

61. By reason of the breach by defendant, Plaintiffs sustained damages.

## THIRD CAUSE OF ACTION: BREACH OF CONTRACT – PERFORMANCE PREVENTED BY DEFENDANT

62. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

63. On or around 2009, for valuable consideration, Defendant entered into an oral agreement with Plaintiff under which Defendant agreed to a business partnership in developing a proprietary software.

64. On or around May 2015, Defendants attended a meeting at Plaintiffs' principal place of business in Madison, WI, to meet with Qualtim and DrJ Engineers to discuss engineering and technology collaboration in developing a proprietary software.

65. On or around September 2017, Defendants attended a meeting at Plaintiffs' principal place of business in Madison, WI, whereas the business plan was discussed as to how the business partnership would move forward and the next steps.

66. Plaintiffs entered into the performance required under the contract, by providing thousands of hours of training, troubleshooting, and strategic planning for Defendants, for which Defendants were not invoiced.

67. On or around June 2024, Defendants discharged Plaintiffs and ordered it to refrain from the performance of any further service under the contract. By doing so, Defendants rendered it impossible for Plaintiffs to complete performance.

68. Plaintiffs performed all conditions of the contract required it to the extent it was permitted to do so by Defendants.

69. The services performed by Plaintiffs under the contract with Defendants were of the reasonable value, agreed to exclusive software ownership, agreed to exclusive engineering, agreed to profit sharing and no part of which has been paid, although Plaintiffs have demanded payment from Defendants.

## FOURTH CAUSE OF ACTION: BREACH OF CONTRACT – UNJUST ENRICHMENT

70. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

71. Plaintiffs conferred a benefit upon the Defendants; that Defendants have and had an appreciation or knowledge of the benefit; and that Defendants accepted or retained the benefit under circumstances making it inequitable for Defendants to retain the benefit without payment of its value.

72. Plaintiffs provided Defendants with $23.8 million in unpaid services and invaluable trade secrets.

73. Defendants have profited from their unlawful and unauthorized use of Plaintiffs' trade secrets, engineering mechanics, physical truss/wall panel testing data, engineering expertise and analysis, engineering supervision, manufacturing knowledge, client contacts, and confidential business information.

74. Defendants had and continue to have an appreciation or knowledge of the benefit provided by Plaintiffs as evidenced by Defendants' public exhibitions, for example, the 2024 Building Component Manufacturer's Conference ("BCMC")[5] and accompanying sales of Clearspan trusses, Saf-T-Rail, etc.

75. Defendants accepted and retained the benefit of the engineering knowledge underlying its mathematical process of the IP-Software.

76. That Defendants accepted and retained the benefit of the IP-Software, making it inequitable for Defendants to retain the benefit of IP-Software without payment of their value.

**FIFTH CAUSE OF ACTION: MISAPPROPRIATION OF TRADE SECRETS**

77. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

78. As part of the discussions between Kirk and Dan, who were experienced professionals in the industry, Defendants were privy to information that Plaintiffs maintained as trade secrets, including, but not limited to, business plans and strategies, pricing information, testing expertise and engineering knowledge. This included executive management and

---

[5] https://www.sbcacomponents.com/media/sbca-innovation-grant-peoples-choice-solution-for-2024-announced; https://assets.noviams.com/novi-file-uploads/sbca/news/2024/10/SBCA_Innovation_Grant_Winner_2024_Announcement.pdf

board level discussions about how the business partnership would be presented to the market.

79. Defendants used trade secret information to which they had access because of their relationship with IP-LLC members, DrJ, and Qualtim.

80. Paragon was fully aware of the collaboration between its original founder, Daniel Holland, and Kirk Grundahl since 2009 in developing a proprietary software.

81. Defendants acquired the trade secret by breaching the NDA.

82. Defendants disclosed the trade secret at the 2024 BCMC without the Plaintiffs' consent.

83. The information is not generally known or ascertainable outside of the Plaintiff's organization or control.

84. Plaintiff derives economic value or business advantage by having exclusive use of information.

85. Plaintiffs had taken reasonable efforts to preserve the secrecy of the information prior to Defendants disclosing information and exhibits to the public.

86. Defendants improperly used the trade secrets to compete with Plaintiffs by promoting that other engineering firms could seal engineered designs that use and benefit from IP-Software.  All truss design drawings DrJ signed and sealed, prior to Defendants unilaterally terminating the DrJ professional engineering relationship were properly copyright protected with respect to each truss design drawing produced using Paragon software. The only copyright protection was provided by DrJ because the truss design used DrJ's exclusive professional engineering expertise. This remains the case today.

87. The improper use of Plaintiffs' trade secrets has caused, and will continue to cause, damages to Plaintiff.

88. Defendants have been unjustly enriched and damaged Plaintiffs' business through the misappropriation of Plaintiffs' trade secrets.

89. Defendants' conduct in relation to the misappropriation of trade secrets of Plaintiffs was outrageous, entitling Plaintiffs to punitive damages.

90. Defendants have engaged in willful and malicious misappropriation and is liable for double damages under *Wis. Stats.* § 134.90(4)(b).

91. Defendants have engaged in willful and deliberate misappropriation and is liable to Plaintiffs for attorney's fees under *Wis. Stats.* §134.90(4)(c).

92. The above-referenced conduct constituted a trade secret misappropriation pursuant to applicable statutes.

93. Plaintiffs will likely succeed on its misappropriation of trade secrets claim for the reasons set forth above.

94. Plaintiffs have been and will continue to be irreparably injured by Defendants' actions.

95. Plaintiffs lack an adequate remedy at law.

**SIXTH CAUSE OF ACTION: CIVIL CONSPIRACY**

96. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

97. On or about June 3, 2024, Defendants agreed and combined to engage in a conspiracy in the following manner:

   a. Defendants ceased communications despite numerous follow-ups from Plaintiffs.

   b. Due to lack of responses without explanation, Plaintiffs traveled to Clearspan in Meridian, Mississippi on May 22, 2024.

    c.   Upon arriving at the Clearspan location, John Holland of Paragon, in a meeting with Keith Hershey and Rob Eason,  served Plaintiffs with an oral and written demand to surrender all its rights to the IP-Software

    d.   Clearspan, along with all other Defendants, terminated all projects and partnerships with Plaintiffs on or about June 3, 2024.

98.   Defendants, and each and every one of them, agreed and/or continued to engage in civil conspiracy to commit unlawful acts as described in this Complaint.

99.   Defendants, and each and every one of them, combined to engage in a civil conspiracy that was furthered by overt acts, including but not limited to, presenting itself to be the sole innovator and owner of IP-Software at BCMC and continue to do so to the public through the use of social media[6] and physical presence at past and future trade conferences.[7]

100.   Defendants, and each and every one of them, understood, accepted, and/or explicitly and/or implicitly agreed to the general objectives of their scheme to inflict the wrongs against and/or injury on Plaintiffs as described in this Complaint.

101.   Defendants, each and every one of them, acquired, possessed, and maintained a general knowledge of the conspiracy's objectives to inflict wrongs against and/or injury on Plaintiffs as described in this complaint.

102.   Defendants, each and every one of them, combined to engage in a scheme that was intended to violate the law and concealed and secreted the scheme.

---

[6] https://www.facebook.com/paragontruss/; https://www.linkedin.com/company/paragontruss/posts/?feedView=all;
[7] Paragon at Virginia Tech https://cpe.vt.edu/woodcon/instructors.html and NCSEA Summit
https://static1.squarespace.com/static/623b6a3de0e2333339fd2afb/t/6660f68cb7a73908985969e4/1717630604527/06052024+Exhibit+Hall+Floor+Plan.pdf;
https://static1.squarespace.com/static/623b6a3de0e2333339fd2afb/t/6713c23ac9d7e70d6de6165e/1729348154507/10.19.24+2024+Exhibit+Hall+Floor+Plan.pdf

103. Defendants, each and every one of them, combined to engage in a scheme that was intended to violate the rights of Plaintiffs.

104. In committing the acts described above, Defendants acted with malice toward Plaintiffs, and Plaintiffs are entitled to recover exemplary damages.

105. In committing the acts described above, Defendants acted with malice toward Plaintiffs and Plaintiffs are entitled to recover punitive damages or such as will sufficiently punish defendants for their willful and malicious conduct and as will serve as an example to prevent a repetition of such conduct in the future.

**SEVENTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT**

106. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

107. A valid oral contract exists between Plaintiffs and Clearspan since both parties have acted as business partners for decades. Qualtim and DrJ were the exclusive engineering companies providing their professional engineering knowledge to meet all of Clearspan's engineering mechanics and structural engineering needs since May of 2009.

108. Upon information and belief, Defendants Paragon, John Holland, Rob Eason, and James Holland intentionally induced all other Defendants to breach the contract or otherwise acted in a way to render performance impossible.

109. Plaintiffs suffered damages due to the Defendants' conduct.

**EIGHTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**

110. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

111. Plaintiffs had a valid and reasonable expectation of entering into or continuing prospective contractual relationships with Defendants.

112. Defendants, by withholding access and ownership rights to IP-Software without any notice and through the improper use of confidential and trade secret information of Plaintiffs, have purposely interfered with Plaintiffs' contractual relationships with existing and prospective clients.

113. Defendants induced and continue to induce other industry participants from developing a contractual relationship with Plaintiffs.

114. Without notice to Plaintiffs or Plaintiffs' customers, Paragon directly contacted all of Plaintiffs' customers, believed to be more than 1,000 truss plant locations, indicating that Plaintiffs no longer had access to the software, causing alarm and confusion. Under extreme duress, Plaintiffs were required to instantly contact all its customers and undertake the immediate development of a new software system for processing the workflow and PDF processing related to Plaintiffs' incoming jobs. Due to marketplace confusion, Plaintiffs' business was harmed and in some instances, customers stopped sending work to Plaintiffs.

115. Upon information and belief, Defendants began directly marketing IP-Software to Plaintiffs' customers and the component manufacturing at large including but not limited to, exhibiting at BCMC, misrepresenting that Defendants solely own the IP-Software.

116. The Defendants' actions interfered and disrupted current and prospective contractual relationships between Plaintiffs and Plaintiffs' existing and prospective clients.

117. Interference by the Defendants in the prospective contractual relationships between Plaintiffs and industry participants was not privileged.

118. Plaintiffs' legitimate expectancy of prospective contractual relationships with certain of their clients have not and will not ripen into valid contractual relationships because of Defendants' purposeful interference with Plaintiffs' prospective contractual relationships.

119. As a consequence, Plaintiffs have suffered and will suffer damages as a result of its loss of business.

120. The action of the Defendants in interfering with Plaintiffs' prospective contractual relationships with purchasers of truss engineering was outrageous, entitling Plaintiffs to punitive damages.

121. Plaintiffs will likely succeed on its interference with prospective economic advantage claim for the reasons set forth above.

122. Plaintiffs have been and will continue to be irreparably injured by the Defendants' actions.

123. Plaintiffs lack an adequate and complete remedy at law.

## NINTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

124. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

125. A business relationship exists between Plaintiffs and certain structural component manufacturing companies with the likelihood of future economic benefit to Plaintiffs.

126. Defendants knew or had reason to know of the relationships.

127. Defendants wrongfully disrupted the business relationships by its unlawful actions, including but not limited to terminating Plaintiff's use and ownership rights to the IP-Software

128. Defendants intended to disrupt the business relationship.

129. Defendants' conduct caused the Plaintiffs to suffer economic injury.

## TENTH CAUSE OF ACTION: MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION

130. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

131. Defendants intentionally and wrongfully converted and misappropriated Plaintiffs' confidential proprietary business information.

132. As a result of Defendants' intentional and wrongful conduct, Plaintiffs have been injured, and is entitled to recover compensatory damages and interest in an amount as the proof at trial may warrant, in addition to punitive damages.

## ELEVENTH CAUSE OF ACTION: THEFT OF TRADE SECRETS

133. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

134. Defendants signed the NDA with knowledge that they received and continue to receive trade secrets in the development of IP-Software.

135. Defendants without any notice deprived Plaintiffs use and access to IP-Software.

136. Less than a year after signing the NDA, Defendants represented to Plaintiffs' customers and prospects that they were the sole owner of IP-Software.

## TWELFTH CAUSE OF ACTION: INJUNCTION

137. Plaintiffs incorporate by reference the facts and allegations contained in the foregoing paragraphs as if set forth fully herein.

138. Plaintiffs will suffer irreparable injury through Defendants' current and continued us of Plaintiffs' trade secrets, confidential, and proprietary business information to unfairly compete with Plaintiff in violation of its agreement.

139. Plaintiff will suffer irreparable injury if Paragon is not immediately enjoined from: (i) using and disclosing Plaintiffs' confidential and proprietary business information; (ii) (ii) soliciting or servicing, or attempting to solicit or service, Qualtim/DrJ clients or prospects; and (iv) interfering with, or attempting to interfere with, Plaintiffs' relationships with their clients.

140. Money damages would be inadequate to fully compensate Plaintiffs for the incalculable loss of its confidentiality, competitive edge, good-will, customers and business relationships, and an amount of future profits that is impossible to determine, that would result from the continued wrongful acts of Defendants.

141. Plaintiff is therefore entitled to an injunction restraining Paragon, and anyone acting in concert with its behalf, from:

(a) disclosing to any person or entity any confidential or proprietary information or documents that Defendants learned or obtained during the strategic planning meetings and trainings provided by Plaintiffs including but not limited to any confidential or proprietary business information or documents concerning Plaintiffs' business partners;

(b) for the time period while this litigation is in progress.

(c) Defendants should be directed to deliver to Plaintiffs a record of projects known or has reason to know belonged to Plaintiffs prior to Paragon terminating Plaintiffs access to the IP-Software.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff requests judgment against Defendants jointly and severally,

142. Compensatory damages of $23.8 million dollars with interest at the legal rate on such amount awarded as allowed by law from July 2024, until paid;

143. Double damages pursuant to *Wis. Stats.* § 134.90(4)(b).

144. Consequential damages in favor of Plaintiffs for an amount that will fairly and adequately compensate Plaintiffs for the losses it has suffered;

145. Costs of this suit;

146. Judgment for punitive damages in favor of Plaintiffs against Defendants jointly and severally.

147. Judgment disgorging all income and other benefits Defendants received in committing the above wrongful actions;

148. Reasonable attorney's fees, cost, and disbursement, and

149. Such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands trial by jury on all claims and issues so triable.

This 24th day of October, 2024.

Respectfully submitted,

Mayville La Rosa, Esq. WI Bar# 1119613
200 Verona Ave. 5003
Verona, WI 53593
Phone: (608) 800-7353 / Email: mlarosa@kfinnovations.com

**Complete List of All Defendants and last known addresses**

Paragon Component Systems, LLC
200 West Mlk Boulevard Ste 1000 PMB 0196
Chattanooga, TN 37402

Clearspan Component Systems, LLC
Registered Agent: Corporation Service
Company
109 Executive Drive Suite 3
Madison, MS 39110

John Holland
302 Mcfarland Rd
Lookout Mountain, GA 30750

James Holland
880 Daleville Prismatic Road
Daleville, MS 39326

Andrew Ewin
1815 Walker St
Chattanooga, TN 37404-1322

David Reed
3911 Howard Ave
Chattanooga, TN 37411

Scott Hoelsema
760 McKewin Ave.
Baltimore, MD 21218

Seth Duncan
10 Alice Road
Anniston, AL 36207

Michael Pitts
185 Montag Cir, NE, Unit 208
Atlanta, GA 30307

Avery Radmacher
107 Century Dr
Rossville, GA 30741

Nathan Bierema
3209 Parkwood Ave
Richmond, VA 23221

Jeremy Bierema
34 International Ave
Piscataway, NJ  08854

Rob Eason
11058 Highway 39
Daleville, MS 39326